IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 13 |
| ROLANDO PONCE and : | |
| MYRNA GARCIA : | |
| : | CASE NO. 1-08-bk-04048 RNO |
| Debtors : | |

*************************************************************************

| | |
|---|---|
| CHARLES J. DEHART, III, STANDING : | |
| CHAPTER 13 TRUSTEE : | |
| : | |
| Movant : | |
| : | |
| v. : | |
| : | |
| ROLANDO PONCE and : | |
| MYRNA GARCIA : | |
| : | |
| Respondents : | |

# **OPINION**[1]

This contested matter was commenced by an objection to confirmation filed by the Chapter 13 Trustee ("the Trustee"). This Opinion addresses the Trustee's objection concerning projected disposable income. Presently before this Court is the question of whether, in a Chapter 13 case, projected disposable income is limited to the calculations on Form B22C, which is based upon the means test. First, I will compare and contrast "projected disposable income" and "disposable income." Second, based on the determinations set forth below, an evidentiary hearing will be set to establish a record on whether the Debtors have committed their projected disposable income to their Chapter 13 plan.

---

[1] Drafted with the assistance of William C. Blasses, Esq., Law Clerk

1

**I.     Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1)&(2)(A)(B).  This is a core proceeding under 28 U.S.C. § 157(L).

**II.    History and Facts**

Rolando Ponce and Myrna Gracia (hereinafter "the Debtors") filed a Chapter 13 voluntary petition on October 30, 2008.  A Chapter 13 plan was filed on December 10, 2008.  The plan proposes payments of $274.06 per month for sixty months.  The Trustee filed an objection to the plan's confirmation on February 9, 2009.  At the March 12, 2009, confirmation hearing, the dispute was narrowed to an issue of whether the Debtors' plan provided for the Debtors' projected disposable income received in the applicable commitment period.  Also, at that hearing, the parties stipulated that the monthly disposable income as calculated pursuant to Form B22C is $501.36.

**III.   Discussion**

    **A.    The Trustee's Objection**

The Trustee maintains that the requirements of 11 U.S.C. § 1325(b)(1)(B)[2] have not been satisfied.  Specifically, the Debtors and the Trustee disagree as to the definition of "projected disposable income" as mentioned in § 1325(b)(1)(B). The Trustee maintains that the definition is restricted to the disposable income determined by Form B22C.  However, the Debtors argue that projected disposable income should take into account the decrease in income caused by the loss of a part time job previously held by one of the Debtors.  The Debtors also

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

argue that I should look past the disposable income determination of Form B22C and consider the information contained within Schedules I and J. Previously, I wrote on the term "applicable commitment period" and whether § 1325(b)(1)(B) created a specific plan duration requirement. *See In re Lopatka*, 400 B.R. 433 (Bankr. M.D.Pa. 2009). In that opinion, I observed that:

> Some courts have held that a projected disposable income is a forward looking concept, so that disposable income per the means test creates only a rebuttable presumption as to "projected disposable income" for purposes of overruling an objection under § 1325(b)(1)(B). *In re Lanning*, 545 F.3d 1269, 1282 (10th Cir. 2008); *In re Jass*, 340 B.R. 411, 416 (Bankr. D.Utah 2006). These courts hold that it is sometimes appropriate to make adjustments from the means test's formulaic results to account for circumstances like a post-petition job loss or promotion. Other courts have found the means test's results to be the sole determining factor in calculating a debtor's projected disposable income. *In re Kolb*, 366 B.R. 802, 818 (Bankr. S.D.Ohio 2007); *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006) ("The court finds that, in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math.").

*In re Lopatka*, 400 B.R. at 435.

The starting point for analysis of statutory construction is the "existing statutory text." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004). I, therefore, now turn to the analysis of § 1325(b).

### B. 11 U.S.C. § 1325(b)

Section 1325(b) sets forth certain requirements for overruling a trustee's objection to confirmation of a chapter 13 plan. Specifically:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
> (A) the value of the property to be distributed under the plan on account of such claim is not less than

3

the amount of such claim; or
(B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan *will be applied to make payments* to unsecured creditors under the plan. (Emphasis added).

The term "disposable income" is further defined in § 1325(b)(2) as:

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

As made clear by § 1325(b)(3), the "amounts reasonably necessary to be expended" for the purposes of § 1325(b)(2) are statutorily defined by the provisions of § 707(b)(2) (hereinafter "Means Test") if a debtor's "current monthly income" exceeds certain thresholds. Current monthly income is defined by § 101(10A) as:

>>> (10A) The term "current monthly income" --
>>>> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
>>>>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>>>>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>>>> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes . . .

For the purposes of § 1325(b)(3), current monthly income is multiplied by twelve and then compared with the median family income based on the household size for the applicable state. *See* § 1325(b)(3). In the present case, it was stipulated at the confirmation hearing that the Debtors' current monthly income multiplied by twelve is above the median family income. Therefore, the statutory framework of the Means Test applies to the determination of disposable income. I will next consider what relevance the Debtors' disposable income has in defining projected disposable income.

  **C.**  **The Approaches to Defining Projected Disposable Income**

  While the definition of disposable income is statutorily clear, the significance of the phrase "projected disposable income" is that of much dispute. *See, e.g., In re Lanning*, 545 F.3d

5

1269, 1275-1278 (10th Cir. 2008) (comparing and contrasting the mechanical versus the forward looking approaches to determining projected disposable income). However, the ". . . mere existence of multiple constructions alone [does] not make [a] statute ambiguous. Rather, " '[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' " *In re Lopatka*, 400 B.R. at 437-438 (citing *In re Price,* 370 F.3d 362, 368-369 (3d Cir. 2004).

Bankruptcy and appellate courts have reached divergent conclusions in interpreting this section of the Bankruptcy Code. On one side are the courts that determine projected disposable income by looking forward and treating Form B22C's disposable income as a presumption that can be rebutted. *See, e.g., In re Lanning*, 545 F.3d at 1282; *In re Jass*, 340 B.R. 411, 416 (Bankr. D.Utah 2006); *In re Frederickson*, 545 F.3d 652, 659 (8th Cir. 2008), *cert. denied* 129 S.Ct. 1630 (2009); *In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D.Tex. 2006); *In re Petro*, 395 B.R. 369, 377 (6th Cir. B.A.P. 2008); *In re Kibbe*, 361 B.R. 302, 314 (1st Cir. B.A.P. 2007). On the other side are the courts that determine projected disposable income by multiplying the applicable commitment period by the monthly disposable income determined on Form B22C. *See, e.g., In re Kagenveama*, 541 F.3d 868, 875 (9th Cir. 2008); *In re Austin*, 372 B.R. 668, 679 (Bankr. D.Vt. 2007); *In re Tranmer*, 355 B.R. 234, 242 (Bankr. D.Mont. 2006); *In re Kolb*, 366 B.R. 802, 817-18 (Bankr. S.D.Ohio 2007); *In re Hanks*, 362 B.R. 494, 498 (Bankr. D.Utah 2007). Within this District, my colleague, Judge Thomas, has chosen the latter approach. *In re Bardo*, 379 B.R. 524, 528 (Bankr. M.D.Pa. 2007). In this District, Judge France has also considered this question and opined:

6

> While the Court concludes that in most cases "projected disposable income" is determined by multiplying monthly disposable income by the number of months in the applicable commitment period, it does acknowledge that there will be instances in which the use of this formula will produce an absurd result mandating the consideration of other factors. Illustrative situations include the loss of lucrative employment immediately prior to the filing of the petition with little prospect of obtaining comparable income within a reasonable period. Similar dire circumstances may occur on the deductions side as well. For example, the debtor or a member of his family may incur significant, uncovered medical expenses that will reduce disposable income. Form B22C does not produce an absurd result in this case, however, so calculating disposable income by using the form is appropriate.

*In re Vaughn*, 2007 WL 6376238, 7 (Bankr. M.D.Pa. 2007)

Thus, experienced, hard-working jurists faced with the same legal question have reached different conclusions. What follows is my analysis of whether "disposable income" and "projected disposable income" are the same or different under § 1325(b).

**D.  Analyzing § 1325(b)**

In the instant case, the Trustee and the Debtors have advocated for opposing approaches to interpreting "projected disposable income." The Debtors advocate a definition of "projected disposable income" that looks beyond the Means Test. Debtors' Br. in Opp'n 20. In support of this, the Debtors note that the definition of disposable income under Chapter 13 is more narrow than current monthly income as defined in § 101(10A) and which is utilized in Chapter 7 means test determinations. Debtors' Br. in Opp'n 12. The Debtors also point to the language of § 521(f) requiring the filing of certain information related to tax returns as anticipating changes in Chapter 13 plan payments. Debtors' Br. in Opp'n 14-15. Additionally, the Debtors argue that "special circumstances" exist as defined by § 707(b)(2)(B) and that the "special circumstances" justify a deviation from the Means Test calculations. Debtors' Br. in Opp'n 12-14.

7

Conversely, the Trustee argues that the term projected only requires multiplication of disposable income, as defined by statute, over the applicable commitment period. Trustee's Br. in Supp. 7. The Trustee argues that such an approach does not render the word "projected" meaningless. Trustee's Br. in Supp. 5. The Trustee further argues that departure from the Means Test calculations is not warranted in this instance because the Debtors have not alleged the necessary level of "special circumstances" as defined by § 707(b)(2)(B). Trustee's Br. in Supp. 6-7.

The parties' arguments frame two issues for this Court to decide. The first issue requires this Court to define "projected disposable income" for the purposes of § 1325(b). The second issue is whether the Debtors have alleged special circumstances sufficient for deviation from the Means Test. As I previously stated in *In re Lopatka*:

> The doctrine of judicial restraint suggests that a court should decide the fewest issues necessary to resolve the subject dispute. *Morse v. Frederick*, 551 U.S. 393, 127 S.Ct. 2618, 2641-42, 168 L.Ed.2d 290 (U.S. 2007) (Justice Alito concurrence); *PDK Labs., Inc. v. Drug Enforcement Admin.*, 362 F.3d 786, 799 (C.A.D.C. 2004) (Roberts, J., concurring in part and concurring in judgment " '. . . the cardinal principle of judicial restraint' is that 'if it is not necessary to decide more, it is necessary not to decide more.' ").

400 B.R. 433, 440 (Bankr. M.D.Pa 2009). The threshold issue to decide is the definition of "projected disposable income". For the reasons set forth below, an inquiry as to whether the Debtors' allegations would constitute "special circumstances" is unnecessary. I, therefore, exercise judicial restraint and decide only the definition of projected disposable income, beginning by analyzing the statutory construction.

"It is a well established canon of statutory construction that 'provisions in different statutes should, if possible, be interpreted so as to effectuate both provisions.' " *In re Udell*, 454

8

F.3d 180, 184 (3d Cir. 2006) (quoting *Cutaiar v. Marshall*, 590 F.2d 523, 530 (3d Cir. 1979)). Statutes also should not be construed in a way that would make part of the statutes either superfluous or redundant. *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 383 (Bankr. W.D.Pa. 2008) (citing *Connecticut National Bank v. Germain*, 503 U.S. 249, 252-54, 112 S.Ct. 1146, 1148-1149, 117 L.Ed.2d 391 (1992)). I cannot disregard the fact that Congress included a definition for disposable income in § 1325(b)(2). However, at the same time, an interpretation that "projected disposable income" and "disposable income" share the same definition does seem to make the use of the word "projected" superfluous and unnecessary.

Additionally, I note that in 2005, Congress amended the definition of disposable income. However, it did not define the term projected disposable income. "When Congress amends the bankruptcy laws, it does not write on a 'clean slate.' " *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (referencing *Emil v. Hanley*, 318 U.S. 515, 521, 63 S.Ct. 687, 690-91, 87 L.Ed. 954 (1943)). Interpretations that represent a major change from prior practice should be treated cautiously. *See Dewsnup*, 502 U.S. at 419; *Cohen v. de la Cruz*, 523 U.S. 213, 221-222, 118 S.Ct. 1212, 1218, 140 L.Ed.2d 341 (1998). "Before BAPCPA was enacted in 2005, 'disposable income' was defined as 'income which is received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance and support of the debtor or a dependent of the debtor.". *In re Reeves*, 405 B.R. 135, 138 (Bankr. D.Del. 2009) (quoting 11 U.S.C. § 1325(b)(2)(A) (1994)). At that time, courts used the debtor's schedules I and J to determine a debtor's disposable income. *In re Liverman*, 383 B.R. 604, 608 (Bankr. D.N.J. 2008). Multiplying that amount, with certain adjustments, by the applicable number of months yielded projected disposable income. *Id.*

9

Complicating matters further, Congress gave little guidance as to their intent and purpose in changing § 1325(b). In wrestling with this statutory interpretation, the Tenth Circuit looked to a House Report issued just prior to BAPCPA's enactment:

> "The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means-testing'), which is intended to ensure that debtors repay creditors the maximum they can afford." H. R. Rep. No. 109-31, pt. 1, at 2 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89. . . . While the statement in the House Report is exceedingly general for our purposes and expresses the view only of the members of the Judiciary Committee, it is consistent with the forward-looking approach, which assists a Chapter 13 debtor to propose a confirmable plan and repay creditors the maximum she can afford-no more and no less.

*In re Lanning*, 545 F.3d 1269, 1280-1281 (10th Cir. 2008). The Tenth Circuit conceded that the legislative materials were of limited assistance because it could also be inferred that Congress defined disposable income with the knowledge that some debtors would be paying less than the maximum that they can afford. *Id.* It does seem reasonable that Congress would intend that a debtor in bankruptcy pay no more or less than the maximum that he or she can afford. However, strict adherence to the Means Test may not accomplish that goal.

Defining "projected disposable income" as solely a function of "disposable income" multiplied by the applicable commitment period can have unfortunate results and be inconsistent with the idea of a debtor paying the maximum that he or she can afford. As I have previously noted in a Chapter 7 context, the disposable income calculations of the Means Test are not based on the "actual" present situation of a given debtor. *See In re Wiederhold*, 381 B.R. 626, 630-631 (Bankr. M.D.Pa. 2008) (discussing the difference between actual and applicable expenses). A

10

Case 1:08-bk-04048-RNO    Doc 28    Filed 06/22/09    Entered 06/22/09 13:32:41    Desc
Main Document      Page 10 of 14

similar concern is raised when current monthly income is determined by looking at the debtor's earnings from the six months prior to filing bankruptcy rather than a debtor's current employment and earning expectations. The Eighth Circuit, in *In re Frederickson*, characterized an approach that equated disposable income as defined in § 1325(b)(2) with projected disposable income as causing "anomalous, and perhaps even absurd, results". 545 F.3d 652, 659 (8th Cir. 2008). The Tenth Circuit also cited a troubling example of equating disposable income with projected disposable income:

> Moreover, when an above-median debtor has Form B22C disposable income under the means test, she will not qualify for Chapter 7 protection. But when that debtor seeks Chapter 13 protection and no longer earns her prepetition income, she will be unable to confirm a plan over objection if bound to historical income and the mechanical approach to § 1325(b)(1)(B). If, as stated in *In re Hanks*, 362 B.R. at 500, Congress may have intended that such a debtor then could seek Chapter 11 protection, it appears the debtor would encounter the same bar to confirmation due to the application of the definition of "disposable income" in 11 U.S.C. § 1129(a)(15)(B) noted above. Alternately, it could be that Congress intended to foreclose bankruptcy protection to such debtors altogether, but there is no obvious support for attributing such intent to Congress.

*In re Lanning*, 545 at 1281.

The Tenth Circuit went on to note that such an approach would have an additional effect of allowing an above median income debtor whose income had increased above the six month average calculated by the statute to pay less than the debtor is able. *Id.* Such results are particularly troubling to this Court because it would indicate a Congressional intent to foreclose bankruptcy to some above median income debtors while at the same time allowing other debtors to pay much less than the maximum that they can afford. Why should a bankruptcy court not consider changes in actual circumstances which occur either within the six-month period prior to

11

the filing of the bankruptcy or post-petition but prior to the confirmation hearing?

I find that projected disposable income must be interpreted in a way that allows this Court to consider information beyond the disposable income determined on Form B22C in certain circumstances. Like the court in *In re Reeves*, I am also convinced ". . . that adopting the forward-looking view also better serves the goals Congress clearly sought to advance when it enacted BAPCPA." 405 B.R. at 142 (Bankr. D.Del. 2009). When changes occur within six months of filing or shortly thereafter, the Means Test no longer measures that which it was designed to measure. *See, e.g., In re Reeves*, 405 B.R. at 143 (describing a common situation in which the Means Test figures due to such changes are "wildly inaccurate."). Such an interpretation also avoids the harsh result of excluding from bankruptcy those that are most likely to need it, namely those with a significant life change within six months of the bankruptcy petition's filing.

When should a court consider pre-confirmation changed circumstances? I will employ the following analysis. First, would accounting for the change result in an increase or decrease of the monthly disposable income, per the Means Test, of twenty percent or greater? If so, the presumption in favor of use of the Means Test to calculate projected disposable income would be rebutted. If the presumption has been rebutted, then this Court will consider the following illustrative and non-exclusive factors to determine a debtor's projected disposable income:

1. Was the change in circumstances due to voluntary actions by the debtor? (e.g., finding a new job or quitting a current position)

2. Was the change in circumstances due to the actions of a third party? (e.g., employer promotes or terminates the debtor)

3. Was the change in circumstances due to a significant change in the debtor's health or pre-existing medical condition? (e.g., diagnosis of a heart condition

12

> with work-related limitations or surgical correction of a previously limiting back condition)
>
> 4. Is an increase or reduction in post-petition expenses due to the debtor's own choices? (e.g., purchasing a new car or surrendering an over-encumbered vehicle)
>
> 5. Is an increase or reduction in the post-petition expenses due to the actions of a third party? (e.g., significant increase or decrease in real property tax assessment or insurance premium)
>
> 6. How forthcoming has the debtor been with the court and his creditors since the bankruptcy petition was filed?
>
> 7. How much will taking into account the post-petition change in circumstances affect the distribution to unsecured creditors in the case?

I believe that after weighing these factors, the Court can reasonably determine whether the calculation of projected disposable income in a particular case will or will not require consideration of the post-petition changes in the debtor's personal or financial circumstances.

These factors are similar to some of the pre-BAPCPA "good faith" concerns courts had in determining a debtor's "projected disposable income". *See, e.g., In re Arrigo*, 399 B.R. 700, 707 (Bankr. D.Colo. 2008) (citing factors outlined by the Tenth Circuit in *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983)); *In re Chaffin*, 836 F.2d 215, 216 (5th Cir. 1988) (considering factors including whether plan payments reflected the ability to pay and projected future income, whether the debtor is likely using bankruptcy to avoid repayment, whether creditors have challenged the proposed plan); *In re Rimgale*, 669 F.2d 426, 432-433 (7th Cir. 1982) (listing factors focusing in on whether the proposed payments were fundamentally fair to the creditors and the accuracy of statements regarding the debtor's debts, expenses, and repayment as well as the nature of any inaccuracies and deficiencies); *In re Terry*, 279 B.R. 240, 245-246 (Bankr. W.D.Ark. 2002).

13

The factors I have outlined, like the factors in the above cases, are not an exclusive list and other factors may be employed to evaluate the nature of the circumstances in a case where a party advocates a departure from the Means Test calculations.

In the present case, the Debtors allege a change in monthly disposable income of nearly forty-five percent due to the loss of the joint Debtor's part-time job. This clearly exceeds the twenty percent threshold that I have set for these matters. However, since the record regarding the circumstances of the change is sparse, I will not now decide whether to deviate from the Means Test calculations in this matter but will order an evidentiary hearing to determine what adjustments, if any, should be made. As I have found that deviation from the Means Test may be appropriate in this case, I need not now examine whether the alleged changed circumstances rise to the level of "special circumstances" as contained within § 707(b)(2)(B).

### IV. Conclusion

The reasoning and conclusions set forth above are this Court's approach to determining projected disposable income. Pursuant to this framework, an evidentiary hearing will be scheduled to determine the Debtors' projected disposable income. An Order will be entered consistent with the foregoing Opinion.

Date: June 22, 2009

Robert N. Opel, II, Bankruptcy Judge (BI)

*This opinion is electronically signed and filed on the same date.*