# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| ROLANDO PONCE and | : | |
| MYRNA GARCIA | : | |
| | : | CASE NO. 1-08-bk-04048 RNO |
| Debtors | : | |

*************************************************************************

| | |
|---|---|
| CHARLES J. DEHART, III, STANDING | : |
| CHAPTER 13 TRUSTEE | : |
| | : |
| Movant | : |
| | : |
| v. | : |
| | : |
| ROLANDO PONCE and | : |
| MYRNA GARCIA | : |
| | : |
| Respondents | : |

## **OPINION**[1]

This contested matter was commenced by an objection to confirmation filed by the Chapter 13 Trustee ("the Trustee"). Following a hearing on confirmation of the Chapter 13 plan, an Opinion was rendered by this Court on June 22, 2009. Pursuant to that decision, this Court held an evidentiary hearing to determine the projected disposable income of Rolando Ponce and Myrna Gracia (hereinafter "the Debtors"). Following the evidentiary hearing, the matter was again taken under advisement. Presently before this Court are two questions. First, whether this Court should adjust the Debtors' means test calculations in determining the Debtors' projected disposable income. Second, whether the Debtors' Chapter 13 plan satisfies the requirements of 11 U.S.C. § 1325(b)(1)(B). For the reasons set forth below, the Trustee's objection is sustained.

---

[1] Drafted with the assistance of William C. Blasses, Esq., Law Clerk.

1

I.  **Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1)&(2)(A)(B).  This is a core proceeding under 28 U.S.C. § 157(L).

II. **History and Facts**

The Debtors filed a Chapter 13 voluntary petition on October 30, 2008.  A Chapter 13 plan was filed on December 10, 2008.  The plan proposes payments of $274.06 per month for sixty months.  The Trustee filed an objection to the plan's confirmation on February 9, 2009.  At the March 12, 2009, confirmation hearing, the dispute was narrowed to an issue of whether the Debtors' plan provided for the Debtors' projected disposable income received in the applicable commitment period.  Also, at that hearing, the parties stipulated that the monthly disposable income as calculated pursuant to Form B22C is $501.36.

At a subsequent evidentiary hearing, one of the Debtors, Myrna Garcia ("Garcia") testified in support of the Debtors' Chapter 13 plan.  Garcia testified that at the time of filing, she had full-time employment.  Hr'g Tr. 5, Aug. 5, 2009.  She also testified that prior to filing bankruptcy, she had other additional employment.  Hr'g Tr. 6.  This other employment consisted of a part-time job that yielded an additional $350.00 a month.  Hr'g Tr. 6-7.  Garcia stated that the reason for obtaining this part-time job was to supplement the household income while her husband was on disability for six months.  Hr'g Tr. 6.

Garcia discussed certain circumstances that led to an increase in her expenses.  She testified that, in December 2007, her adult daughter became pregnant.  Hr'g Tr. 7.  She testified that her grandson was born in September, 2008.  Hr'g Tr. 8-9.  This increased the number of people living in her home to five, including the Debtors, their son, their daughter, and their

2

grandson. Hr'g Tr. 7. Garcia testified that she provides 100 percent of the support to her son, her daughter, and her grandson. Hr'g Tr. 7. She stated that she left her position at her part-time job so that she could care for her daughter toward the end of her daughter's pregnancy. Hr'g Tr. 8. Garcia also mentioned that she had started suffering from tendinitis which was affected by certain work at her part-time job. Hr'g Tr. 9-10.

Following the birth of her grandson, Garcia explained that she chose to stay home to babysit her grandson so that her 21-year-old daughter could go back to being a full-time student.[2] Hr'g Tr. 8, 32. She explained that her daughter had attempted to pursue child support from her grandchild's father. Hr'g Tr. 10. Garcia testified that, at the support review hearing, it was determined that the father had no money that could be given as support.[3] Hr'g Tr. 10-11. Garcia stated that her daughter had tried to obtain Welfare but was ineligible as Garcia's dependent. Hr'g Tr. 11. She elaborated that, because of her help to her daughter, the agency evaluated her daughter's eligibility based on Garcia's income rather than her daughter's income. Hr'g Tr. 11.

Garcia also described efforts to find alternative care for her grandchild. Hr'g Tr. 12. She stated that such care would cost $420.00 or more for two or three days per week. Hr'g Tr. 12; Hr'g Tr. 17. Garcia explained that the reason she filed bankruptcy was because of default judgments obtained by certain creditors. Hr'g Tr. 11. She also noted that providing payments higher than those proposed in the Debtors' Chapter 13 plan would be difficult because her husband's employment had been reduced from 40 hours each week to 40 hours one week and 32

---

[2] On cross examination, Garcia elaborated that her daughter had already graduated with an associates degree in May 2009, but was expecting to go back to school for a bachelor's degree in late August 2009. Hr'g Tr. 16-17.

[3] However, Garcia seemed to contradict this statement on cross-examination when she indicated that a review was still being done as to the grandchild's father's disability. Hr'g Tr. 21.

3

hours the next week.  Hr'g Tr. 12.  She said this had the effect of reducing his paycheck by two days each month.  Hr'g Tr. 12.

**III.    Discussion**

In my earlier Opinion ("*Ponce I*"), *In re Ponce*, 406 B.R. 490 (Bankr. M.D.Pa. 2009)*,* I outlined the procedure by which I would consider making adjustments to means test formulations to determine projected disposable income:

> When should a court consider pre-confirmation changed circumstances?  I will employ the following analysis.  First, would accounting for the change result in an increase or decrease of the monthly disposable income, per the Means Test, of twenty percent or greater?  If so, the presumption in favor of use of the Means Test to calculate projected disposable income would be rebutted.  If the presumption has been rebutted, then this Court will consider the following illustrative and non-exclusive factors to determine a debtor's projected disposable income:
>
> 1. Was the change in circumstances due to voluntary actions by the debtor?  (e.g., finding a new job or quitting a current position)
>
> 2. Was the change in circumstances due to the actions of a third party?  (e.g., employer promotes or terminates the debtor)
>
> 3. Was the change in circumstances due to a significant change in the debtor's health or pre-existing medical condition? (e.g., diagnosis of a heart condition with work-related limitations or surgical correction of a previously limiting back condition)
>
> 4. Is an increase or reduction in post-petition expenses due to the debtor's own choices? (e.g., purchasing a new car or surrendering an over-encumbered vehicle)
>
> 5. Is an increase or reduction in the post-

4

Case 1:08-bk-04048-RNO    Doc 32    Filed 10/19/09    Entered 10/19/09 09:24:24    Desc
Main Document      Page 4 of 11

> petition expenses due to the actions of a third party? (e.g., significant increase or decrease in real property tax assessment or insurance premium)
>
> 6. How forthcoming has the debtor been with the court and his creditors since the bankruptcy petition was filed?
>
> 7. How much will taking into account the post-petition change in circumstances affect the distribution to unsecured creditors in the case?
>
> I believe that after weighing these factors, the Court can reasonably determine whether the calculation of projected disposable income in a particular case will or will not require consideration of the post-petition changes in the debtor's personal or financial circumstances.
>
> These factors are similar to some of the pre-BAPCPA "good faith" concerns courts had in determining a debtor's "projected disposable income". *See, e.g., In re Arrigo*, 399 B.R. 700, 707 (Bankr. D.Colo. 2008) (citing factors outlined by the Tenth Circuit in *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983)); *In re Chaffin*, 836 F.2d 215, 216 (5th Cir. 1988) (considering factors including whether plan payments reflected the ability to pay and projected future income, whether the debtor is likely using bankruptcy to avoid repayment, whether creditors have challenged the proposed plan); *In re Rimgale*, 669 F.2d 426, 432-433 (7th Cir. 1982) (listing factors focusing in on whether the proposed payments were fundamentally fair to the creditors and the accuracy of statements regarding the debtor's debts, expenses, and repayment as well as the nature of any inaccuracies and deficiencies); *In re Terry*, 279 B.R. 240, 245-246 (Bankr. W.D.Ark. 2002).

*In re Ponce*, 406 at 498.

In the present case, Garcia's testimony shows significant changes in her circumstances that are not considered in her means test calculations. Garcia has stopped working at her part-time job to care for her new grandson. The Debtors are now also paying all of their grandson's

5

Case 1:08-bk-04048-RNO    Doc 32    Filed 10/19/09    Entered 10/19/09 09:24:24    Desc
                    Main Document          Page 5 of 11

living expenses. Additionally, Garcia has stated that her husband's work hours have been reduced during some weeks. It is for these reasons, the Debtors argue, that I should look beyond the means test in determining the projected disposable income to be paid in the Debtors' Chapter 13 plan.

As noted above, a determination of projected disposable involves a look at any changes through the lens of a "good faith" analysis. In *Ponce I*, I listed seven illustrative, non-exclusive factors to be employed in this analysis. I will now consider the record to determine if any changes from disposable income, as calculated by the means test, are required. First, I will note that I received very little testimony or evidence regarding the husband's employment. Garcia testified that in some weeks, her husband worked 32 hours rather than 40 hours. Hr'g Tr. 12. No documentation or additional information was provided to this Court to help quantify what, if any, effect this had upon the Debtors' income. Nor did the husband appear to testify firsthand as to his employment status and terms.

In the context of Chapter 13 plan confirmations, the ultimate burden of persuasion is on the debtor. *In re Sheaffer*, 2008 WL 2858452, 3 (Bankr. M.D.Pa. 2008); *In re Foley,* 2008 WL 5411070, 7 (Bankr. E.D.Pa. 2008); *In re Martorana* 2008 WL 1745784, 2 (Bankr. E.D.Pa. 2008). Having recently decided *Ponce I*, I have not yet commented on the evidentiary burden imposed when a party suggests that projected disposable income be calculated by deviating from the means test. Within this circuit, Judge Fox observed that generally "[t]hose courts considering the section 1325(b)(2) definition of disposable income as relevant to the meaning of projected disposable income in section 1325(b)(1), but not dispositive, place an evidentiary burden upon the party seeking to demonstrate that a result different from the Form 22C

6

calculation is appropriate, as though it were a rebuttable presumption." *In re Davis*, 392 B.R. 132, 139 (Bankr. E.D.Pa. 2008). In another similar circumstance of a court looking beyond the means test, it was observed that:

> The question of the allocation of the burden of proof is closely related to the question of which party has the burden of production of evidence. Some plans are confirmed without presentation of evidence. When there is no objection, the court may confirm a plan without receiving evidence on whether the plan is proposed in good faith and not by any means prohibited by law. Of course, some objections to confirmation may be based solely upon questions of law for which no evidence is required by either party. However, when an objecting party relies upon issues of fact, the debtor has the burden to produce evidence to rebut evidence introduced in support of the objection by the trustee or creditor. If an objecting party challenges the debtor's deviation from Form B22C, under *Lanning*, the debtor has the burden to provide documentation to show that circumstances warrant the deviation and to rebut the objecting party's evidence to the contrary. *In re Melvin*, 2008 WL 5539796, 10 (Bankr. D.Kan. 2008).

In the present case, the Debtors have conceded that their plan payments do not include all the disposable income as calculated by the means test. Therefore, I will join the growing number of courts that have determined that the evidentiary burden to justify deviation is on the debtor. *See e.g., In re Louviere*, 389 B.R. 502, 508-509 (Bankr. E.D.Tex. 2008); *In re Lanning*, 380 B.R. 17, 25 (10th Cir. B.A.P. 2007) (requiring documentation similar to that required when Chapter 7 debtors are seeking to rebut a presumption of abuse under § 707(b)) (affirmed by *In re Lanning*, 545 F.3d 1269 (10th Cir. 2008); *In re Briscoe*, 374 B.R. 1, 19 (Bankr. D.Dist.Col. 2007); *In re Slusher*, 359 B.R. 290, 297 (Bankr. D.Nev. 2007). Upon consideration of the record before me, the Debtors have not provided sufficient evidence to evaluate the purported "change" in Garcia's income under the factors stated above, and I will not consider this "change" for the purposes of determining the Debtors' projected disposable income.

Next, I will consider Garcia's decision to stay home and care for her grandson and the new costs associated with providing for him. The first factor in my test concerns the voluntariness of Garcia's decisions. This factor weighs against an adjustment to the Debtors' projected disposable income. Garcia had no legal obligation to leave her part-time job to care for her grandson nor any legal obligation to pay for all of her grandson's expenses so that her daughter would not have to work. The Court appreciates a mother's desire to do everything possible for her children. However, I must also consider the effect Garcia's decisions have upon her income, and ultimately upon her creditors. I respect that the Debtors are attempting to provide their daughter a chance to get a second college degree, but the cost is not being borne by the Debtors alone. That is to say, the costs incurred and income foregone are not coming from money that the Debtors would be able to keep for themselves or use at their discretion. Rather, the increased costs result in decreased payments to unsecured creditors herein.

The second factor I outlined is whether the change in circumstances is due to the action of a third party. As noted above, while I consider the choices Garcia made to be understandable, I also consider them to be voluntary. I evaluate this factor as being neutral here.

The third factor concerns whether the changes were a result of a change in the debtor's health or a pre-existing medical condition. Garcia testified that she had developed tendinitis and that "labor work" affected her tendinitis. Hr'g Tr. 9-10. She also testified that she was not allowed to do any "heavy lifting". Hr'g Tr. 23. The extent to which this existed or impaired Garcia is not clear in the Court's mind. While the Court is not clear from the testimony or the record, Garcia seemed to indicate that certain work such as being a "cashier" would not have affected her tendinitis. Hr'g Tr. 10, 23. On redirect examination, Garcia was asked about

8

medical opinions concerning her wrist. Hr'g Tr. 27. Garcia stated that the diagnosis regarding her wrist was fairly new. Hr'g Tr. 27. No expert testimony was offered, nor did Garcia have a doctor's report to verify any diagnosis of her wrist. Hr'g Tr. 23.

While Garcia's testimony does establish that she feels certain physical limitations from her ailments, I give the testimony very little weight as it pertains to the prognosis and future ability to work. Also, I will not speculate as to whether the employer would have accommodated Garcia if she had requested to only do work not involving "heavy lifting". Additionally, as stated above, it is apparent that Garcia voluntarily left her job primarily for other reasons. Based on the record presented, I cannot conclude that Garcia was unable to continue her part-time job based on her tendinitis.

The fourth and fifth factors involve the voluntariness of the increase or reduction of the Debtors' expenses. The Debtors are paying for 100 percent of their adult daughter's and grandson's expenses. The rationale behind this is so that their adult daughter can go back to school for a second college degree. While I understand the desire to do so, the Debtors have no legal obligation to take care of their adult daughter and grandson. Furthermore, Garcia testified that her daughter getting a job and living on her own would result in her daughter having to go on Welfare. Hr'g Tr. 18. Garcia further elaborated that the reason her daughter did not go out and do that was because, ". . . that's not something she would want to do if she didn't have to." Hr'g Tr. 18. As noted in the analysis for factors one and two, the acts leading to the increase in expenses were also voluntary in nature. Therefore, I find that factor four weighs against the Debtors and factor five is neutral at best.

9

For factor six, I do not believe I have a sufficient record to make a finding on whether the Debtor was forthcoming in her filings. Testimony from the cross examination of Garcia by the Trustee suggested significant discrepancies between Garcia's testimony regarding the value of jewelry owned and claims by a jewelry store on schedule F. Hr'g Tr. 23-25. As I find this factor of lesser relevance in the instant case, I need not find one way or the other.

For factor seven, I consider the effect on the distribution to unsecured creditors in this case. The present plan provides for $274.06 per month for sixty months. By my calculations, this totals to $16, 443.60 for unsecured creditors. Not deviating from the means test would provide $501.36 per month for 60 months. By my calculations, this totals $30,081.60 for unsecured creditors. The adjustments that the Debtors seek would cut the distribution in this case by approximately 45 percent. I consider such an amount to be quite significant.

In considering the factors, I have not necessarily given them each equal weights. Determinations as to the weights of certain factors depend on the circumstances of the case and will be made on a case by case basis. In this case, none of the factors weigh in favor of the Debtors. I, therefore, do not find a basis in this case to depart from the means test calculations of disposable income.

**IV. Conclusion**

For the reasons set forth above, I hereby sustain the Trustee's objection to confirmation. The Debtors will have thirty days to file an amended Chapter 13 plan consistent with this Opinion. An Order will be entered consistent with the foregoing Opinion.

Date: October 19, 2009

*Robert N. Opel, II, Bankruptcy Judge*
*This opinion is electronically signed and filed on the same date.* (BI)

11

Case 1:08-bk-04048-RNO   Doc 32   Filed 10/19/09   Entered 10/19/09 09:24:24   Desc
Main Document   Page 11 of 11